**Brian R. Talcott, OSB No. 965371**
Email: btalcott@dunncarney.com
Dunn Carney Allen Higgins & Tongue LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204-1357
Telephone: (503) 224-6440
Facsimile: (503) 224-7324

**Brian K. Nichols**
Email: bkn@modrall.com
MODRALL, SPERLING, ROEHL, HARRIS & SISK, PA
500 Fourth Street NW
Albuquerque, NM 87012
Telephone: (505) 848-1852
Facsimile: (505) 449-2052
*Admitted Pro hac vice*

Attorneys for Union Pacific Railroad Company

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNION PACIFIC RAILROAD COMPANY,** | No. 3:17-cv-00038-AA |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO TRIBES' RULE 12(b)(7) MOTION TO DISMISS** |
| v. | |
| **ROD RUNYON**, Commission Chair of the Wasco County Board of County Commissioners, *et al.*, | |
| Defendants. | |

Page 1     OPPOSITION TO MOTION TO DISMISS

Plaintiff Union Pacific Railroad Company ("Union Pacific") opposes the Rule 12(b)(7) Motion to Dismiss ("Motion") filed by the Confederated Tribes of the Warm Springs Reservation of Oregon, the Confederated Tribes and Bands of the Yakama Nation, and the Confederated Tribes of the Umatilla Indian Reservation (collectively, "Tribes").

### INTRODUCTION AND SUMMARY

The only issue in this litigation is whether the *Defendants* – state and county officials – have authority to regulate Union Pacific's rail construction project. As explained in Union Pacific's complaint, Congress has vested "exclusive" jurisdiction over interstate rail projects with a federal agency and preempted "remedies provided under Federal or State law." 49 U.S.C. § 10501(b); Doc. 1 at ¶¶ 45-51. Because the federal agency has exclusive jurisdiction, Union Pacific asks this Court to declare that Defendants do not also have jurisdiction over the project. Defendants' regulatory authority is expressly preempted under 49 U.S.C. § 10501(b).

The Tribes now seek to use their sovereign immunity to thwart Congress's express intent. The Tribes argue that they "have a legally protectable interest in this action, which is the protection of their treaty-reserved rights," and that their absence requires dismissal of the lawsuit. (Motion at 1.) According to the Tribes, Union Pacific's only forum to litigate the preemption issue is in the proceedings before the Gorge Commission – the very proceedings that Union Pacific asserts are preempted by federal law. (Motion at 3.) The Tribes are mistaken for multiple reasons.

First, the Tribes are not required parties under Rule 19(a) because they do not have an "interest" relating to the subject of Union Pacific's action. The subject in this litigation is *who* has jurisdiction to regulate the rail construction project. (Doc. 1 at ¶¶ 45-49.) Union Pacific's claim is that Defendants lack authority to regulate this project because Congress has delegated

Page 2    OPPOSITION TO MOTION TO DISMISS

exclusive authority to other federal agencies. The Tribes' interest in protecting treaty rights is, at most, an indirect and contingent interest to Union Pacific's claims against Defendants.

Second, the Tribes are not required parties under Rule 19(a) because they have not shown that their ability to protect their interests will be impaired by this lawsuit. If Union Pacific prevails, the Tribes are free to pursue their arguments in the forums designated by Congress. In particular, the U.S. Army Corp of Engineers ("Corps") has jurisdiction over this project under the federal Clean Water Act. The Corps has a fiduciary duty to take treaty rights into consideration. (Doc. 4-2 at 12.) When Union Pacific applied for a nationwide permit, the Corps invited these Tribes to address whether the project may impact off-reservation fishing rights. (Doc. 4-2 at 5.) The Umatilla Tribe raised with the Corps the same concerns that the Tribes now raise in their Rule 12(b)(7) motion– i.e., that the project could increase railway traffic, which in turn could result in more derailments or injuries to those crossing the rail track.[1] The Corps characterized these concerns as having only an "indirect effect" on fishing rights and rejected those concerns on the merits as being "speculative" and unsupported. (Doc. 4-2, at 12-13.) The Tribes are bound by these findings unless they are overturned in a proper Administrative Procedure Act challenge. Any impairment in the Tribes' alleged treaty rights is not the result of this lawsuit but rather is a result of their own choice not to pursue relief in the forums designated by Congress.

Third, the Tribes are not indispensable parties under Rule 19(b) because they are not being denied an opportunity to be heard. The Tribes instead are seeking to use their voluntary absence from this lawsuit to deprive Union Pacific of its day in court on the federal preemption

---

[1] *See* Declarations of Mr. Greene [Doc. 29], Mr. Lewis [Doc. 31], and Mr. Hinman [Doc 32-2]. The actual communications by the Tribes in the state proceeding are Attachments K and L to Exhibit B to Mr. Hinman's Declaration.

issue. The Tribes claim that Union Pacific can pursue relief in the Gorge Commission but this is not an adequate forum. This is the forum that Congress has expressly preempted. 49 U.S.C. § 20106(b); Doc. 3 at 13-23. This forum cannot provide timely relief to Union Pacific. And, there is nothing to indicate that the Gorge Commission has the power or expertise to declare the permitting requirements unconstitutional under the U.S. Supremacy Clause. Since there is no other forum to adjudicate Union Pacific's preemption arguments, this case should proceed without the Tribes as parties.[2]

Finally, the Tribes' asserted interests do not overcome the public rights Union Pacific seeks to vindicate in this action. When Congress has provided a national process to evaluate projects in light of other factors, such as the environment, then tribal nations may not utilize sovereign immunity to thwart that procedure. *Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977). For these and other reasons explained more fully below, the Tribes' motion to dismiss should be denied.

## FACTUAL BACKGROUND [3]

This case arises from Union Pacific's efforts to alleviate a significant freight bottleneck that is causing delays in the movement of goods throughout the Pacific Northwest region. (Doc. 1 at ¶¶ 20, 23.) Union Pacific, a common carrier railroad, owns a mainline track that runs from Portland and through the Columbia Gorge on the Oregon side. (Doc. 1 at ¶¶ 11-13.) Built over a hundred years ago, the track cannot accommodate existing freight traffic: it includes a single

---

[2] At the January 18 status conference, the Tribes announced that they would likely seek leave to participate as amicus in these proceedings if their Rule 12(b)(7) motion were denied.

[3] These facts are drawn from the complaint and the preliminary injunction papers. "In reviewing a Rule 12(b)(7) motion, a court must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party." 5C Federal Practice & Procedure § 1359 & n.13.50 (April 2016 update). The court may also consider evidence outside of the pleadings. *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

Page 4   OPPOSITION TO MOTION TO DISMISS

track between The Dalles and Hood River, preventing trains moving in both directions from passing one another. (Doc. 1 at ¶¶ 16-19.) Thus, trains often must idle for extended periods of time, waiting for the oncoming train to pass. (Doc. 1 at ¶¶ 20-22.) Union Pacific plans to alleviate this chokepoint by expanding a second track *adjacent to* its mainline track for a length of 5.37 miles. (Doc. 1 at ¶¶ 23-28.) The second track will be exclusively on Union Pacific's property – and not on any Indian reservations. (Doc. 1 at ¶ 23.) The purpose of the project is **not** to increase rail freight traffic in the area but to allow existing traffic to move through the Gorge area without meaningful delay. (Doc. 4-2 at p. 13.)

Union Pacific has obtained the necessary approvals from federal agencies for this project. (Doc. 3 at 3.) As part of its consideration, the Corps invited these same Tribes and others to address concerns about the project. (Doc. 4-2 at 5.) The Yakama and Warm Springs Tribes did not express concerns about treaty fishing rights.[4] The Umatilla Tribe did express concerns but did not provide any specific or concrete information on impacts to tribal treaty rights. (Doc. 4-2 at 11-12.) The Corps further explained that the Umatilla Tribe was complaining about indirect effects:

> Here, the construction of a second mainline track will not be constructed in or on a usual and accustomed fishing area. The Tribe has not expressed any concern that the construction of the project will eliminate or destroy a usual and accustomed fishing area, rather, their concern is that they believe the project will have an *indirect effect* – an increase in rail traffic –which they are concerned would, in turn, delay their access to their fishing areas, increase the risks of derailments, and increase the risk of train strikes.

---

[4] The Warm Spring Tribe requested that their archeology staff be present to observe construction in previously undisturbed soils. (Doc. 4-1 at 3.) Union Pacific agreed to allow Tribal Staff reasonable accommodation and access, and the Corps set up a procedure for the company to follow before commencing construction or earth disturbance in any areas that contain previously undisturbed soils. (*Id.*)

Page 5     OPPOSITION TO MOTION TO DISMISS

(Doc. 4-2 at 12) (Emphasis added). The Corps then provided detailed reasons for why the Tribe's rail traffic and safety concerns were speculative and unfounded. (Doc. 4-2 at 13-15; Doc. 1 at ¶ 33.)[5] The Corps concluded that the issuance of the permit for the construction of the second track "is not expected to interfere with the [Umatilla Tribe's] exercise of its treaty fishing rights." (Doc. 4-2 at 15.) The Corps found that no federal or state agency coordination was required on this issue. (Doc. 4-2 at 15.) On November 4, 2016, the Corps granted Union Pacific a verification to rely upon a nationwide permit for the project. (Doc. 4-1 at 4.)

Union Pacific had submitted a permit application to Wasco County for comment in January 2015 but expressly preserved its right to invoke federal preemption.[6] The county staff visited Union Pacific's properties and did not see any evidence of recent fishing access or activities. (Doc. 32, Ex. B at 121.) The Planning Commission initially approved the permit with conditions. (Doc. 1 at ¶ 40.) The Wasco County Commissioners reversed. (Doc. 1 at ¶ 41) The Commissioners relied upon a Wasco County ordinance, which states: "If the final decision contradicts the comments, recommendations, or concerns of Indian tribal governments, the County must justify how it reached an opposing conclusion." (Doc. 1 at ¶ 41.) Because "three of the four Treaty tribes of the Gorge had *voiced concerns* that the proposed development would affect Treaty rights," the Commissioners reasoned, "the proposed development must be denied."

---

[5] Courts, too, have rejected as speculative concerns about increased derailments or other safety risks from track expansion projects. *See, e.g., Committee of 100 on the Federal City v. Foxx*, 87 F. Supp. 3d 191, 215 (D. D.C. 2015).

[6] As Union Pacific has explained (Doc. 3 at 11 & n.6.), the federal agency encourages railroads to try to work with local entities before invoking federal preemption. *See CSX Trans. Inc. – Petition for Declaratory Order*, STB Docket No. FD 34662 at n.14, 2005 WL 584026 (STB served Mar. 14, 2015). Here, Union Pacific filed an application as a means of discussing its plans and obtaining the thinking of the community. Union Pacific's submission of a permit application does not waive the preemption defense. *See City of Auburn v. U.S. Gov't*, 154 F.3d 1025, 1028 (9th Cir. 1998) (finding federal preemption even though railroad had voluntarily submitted permit applications to local authorities).

Page 6      OPPOSITION TO MOTION TO DISMISS

(Doc. 1 at ¶ 41) (Emphasis added.) Thus, the Commissioners did not make any "factual findings" (Motion at 10) based on specific evidence of treaty violations but rather simply credited the speculative concerns voiced by the Tribes.

Union Pacific filed an appeal with the Columbia River Gorge Commission, which in turn set a June 2017 hearing date. (Doc. 1 at ¶ 42.) Facing irreparable harm, Union Pacific filed this lawsuit seeking declaratory and injunctive relief against Defendants.

## ARGUMENT

Dismissal under Rule 19(a) is an extreme remedy. To occur, the Tribes must meet a complicated and demanding three-part test. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136, 1146 (D. Or. 2005). The Tribes have not come close to meeting their burden.

### I.     The Tribes Are Not Required Parties

The first step in the analysis under Rule 19 is to determine whether the absent party is "required to be joined." Fed. R. Civ. P. 19(a). There are three scenarios where a party may be "required" pursuant to Fed. R. Civ. P. 19(a). The Tribes invoke only one scenario – that a party may be required if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest . . . ." Fed. R. Civ. P. 19(a)(1)(B)).[7] The Tribes are wrong.

///

///

---

[7] The Tribes discard the other two scenarios in which a party may be required. They do not argue that they are required under Rule 19(a)'s first prong, the "complete relief" prong. Fed. R. Civ. P. 19(a)(1)(A). The Tribes also have waived any argument that they are necessary to avoid inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B)(ii).

Page 7     OPPOSITION TO MOTION TO DISMISS

### A. The Tribes Have No Legally Cognizable Interests at Issue in this Proceeding

Here, the Tribes do not have a legally protected "interest" in the "subject matter of the action." Fed. R. Civ. P. 19(a)(1)(B). As the Tribes concede, the subject matter of this dispute is Union Pacific's claim that Defendants lack authority to regulate this rail construction project. Motion at 10 ("In this action, Union Pacific seeks a declaration that federal law preempts Wasco County's land use permitting requirements....[and] seeks to enjoin application of Wasco County's land use permitting requirements...."). The Tribes allege an interest in "the protection of their treaty-reserved rights" (*id.* at 10) but this is, at best, an indirect and contingent interest to Union Pacific's claims against Defendants. *See United Keetoowah Band of Cherokee Indians of Oklahoma v. United States*, 480 F.3d 1318, 1324-25 (Fed. Cir. 2007) (explaining that an indirect or contingent interest is not sufficient under Rule 19(a) and citing Ninth Circuit precedent in support).

*Yellowstone County v. Pease*, 96 F.3d 1169 (9th Cir. 1996), demonstrates persuasively that the Tribes do not have a direct interest in the subject matter of this litigation. In that case, a tribal member (Pease) obtained a declaratory judgment from the tribal court that he was free from county property taxes. The county then filed an action in federal court, seeking a declaratory judgment that the tribal court lacked jurisdiction over the case. Pease argued that the Tribe was an indispensable party to that action. The Ninth Circuit disagreed, reasoning that Peace did not have a legally protected interest that would be impaired or impeded by the county's suit:

> [T]his case is not about the Tribe's right to tax reservation land; rather this action arose from Pease's claim that the County, a political subdivision of the State of Montana, is powerless to tax his fee-patented property.

Page 8     OPPOSITION TO MOTION TO DISMISS

*Id.* at 1173. Similarly, this lawsuit is not about the Tribes' rights under any treaty with the United States. Rather, this action arises from Union Pacific's claim that the named Defendants are powerless to impose permitting requirements on the rail construction project.[8]

Significantly, *Yellowstone* distinguished this situation from those general circumstances where tribes have been found to be necessary parties. *See id.* at 1173 & n.4. The Ninth Circuit emphasized: "unlike other cases where courts have concluded that tribes are necessary parties under Rule 19(a), here the Tribe cannot demonstrate that it is a party to a relevant commercial agreement, lease, trust, or treaty with one of the parties to the lawsuit." *Id.* at 1173. Thus, *Yellowstone* teaches that the tribe is not a required party when the case is about the county's powers but is a required party when the case is aimed at an agreement between the tribe and one of the parties.

*Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136 (D. Ore. 2005), decided by this Court, applied this same test. This Court found an absent tribe necessary because the requested relief would mean setting aside the gaming contract between the tribe and the State. In *Dewberry*, this Court characterized the absent tribes' contractual rights as being at "the heart of plaintiffs' action." *Dewberry*, 406 F. Supp. 2d at 1149. Similarly in *Washington v. Daley*, 173 F.3d 1159, 1161 (9th Cir. 1999), the plaintiffs challenged federal regulations establishing a framework for implementing the treaty rights and allocating groundfish catches to four Northwest Indian tribes pursuant to those treaties. *See id.* at 1161, 1162-63. The Ninth Circuit found that the tribes had

---

[8] Requiring that an absent tribe be named when a railroad seeks to invoke federal preemption, based on the mere assertion of tribal treaty rights, would lead to the "absurd results" that the Ninth Circuit disavowed in *Yellowstone*. *See Yellowstone*, 96 F.3d at 1173 ("Clearly, the County can seek to have the judgment obtained by Pease vacated on jurisdictional grounds without naming the tribal court [or Tribe] as a defendant.").

Page 9      OPPOSITION TO MOTION TO DISMISS

an interest in the "subject of the action" because the "central dispute" was whether the absent tribes had treaty rights in the particular type of fish. *Id.* at 1167 & n.10 (emphasis added).

By contrast, here, Union Pacific's preemption challenge is aimed only as to the powers of Defendants. (Doc. 1 at ¶¶ 43-51.) The lawsuit does not arise from the terms of the treaties or seek to "impose a coercive order" on any of the Tribes. *Alto v. Black*, 738 F.3d 1111, 1129 (9th Cir. 2013); *Cachil Dehe Band of Wintum Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 972 (9th Cir. 2008) (absent tribes were not required parties because plaintiff did "not seek to invalidate compacts to which it is not a party; this litigation is not *aimed* at the other tribes or their gaming"). The Tribes' treaty rights are not at the heart of Union Pacific's preemption challenge.[9] Union Pacific is not challenging in this Court the merits of the County's order denying the permit; only that the Defendants lacked authority to impose any permitting requirement in the first instance. (Doc. 1 at p. 16); *cf. Makah*, 910 F.2d at 555 (absentee tribes not necessary parties to claims regarding future administrative process for harvest allocation, because "all of the tribes have an equal interest in an administrative process that is lawful").[10]

---

[9] The cases this Court cited in *Dewberry* are similarly distinguishable from the facts and circumstances of this action. *See American Greyhound Racing Inc. v. Hull*, 305 F.3d 1015, 1024 (9th Cir. 2002) ("The sovereign power of the tribe to negotiate contracts is impaired by the ruling."); *Kescoli v. Babbitt*, 101 F.3d 1304 (9th Cir. 1996). The fact that Union Pacific's action does not seek to invalidate any contract right, lease, property interest, or treaty right distinguishes this case from Ninth Circuit decisions finding an absent tribe necessary.

[10] *Makah* also addressed the tribe's challenge to federal regulations that implemented a settlement involving the allocation of Columbia River salmon. The Makah sought to alter the salmon allocation to its benefit. However, the allocation was from a fixed fund, meaning that for the Makah to prevail, another tribe would necessarily lose out on the salmon allocation. Thus, the Makah's claims had a direct and calculable impact on the absent tribes' treaty rights. The Ninth Circuit agreed that the other tribes involved in the settlement were necessary parties because "any share that goes to the Makah must come from [the] other tribes." *Makah*, 910 F.2d at 559. The Tribes here, by contrast, cannot show that this action will have a direct and calculable impact on their treaty rights.

Page 10     OPPOSITION TO MOTION TO DISMISS

In the end, the Tribes simply claim an interest in the treaties, not in the preemption issue that is at issue before the Court. However, the mere assertion of treaty rights is insufficient for purposes of satisfying Rule 19(a). *See Makah*, 910 F.2d at 555. Furthermore, the Tribes' interests in treaty rights are even further attenuated in this case. (Motion at 10.) As the Corps explained, the Tribes are "not claiming that the project will eliminate or destroy a usual and accustomed fishing area, rather, their concern is that they believe the project will have an *indirect effect* – an increase in rail traffic . . . . " (Doc. 4-2 at 12.) The Corps found these concerns to be speculative and unfounded for multiple reasons. (Doc. 4-2 at 13-15; Doc. 1 at ¶ 33.) *See Cachil Dehe Band*, 547 F.3d at 972 (Rule 19 interest "must be more than speculation about a future event"); *Northrup Corp. v. McDonnel Douglas*, 705 F. 2d 1030, 1046 (9th Cir 1983) ("Speculation about the occurrence of a future event ordinarily does not render all parties potentially affected by that future event necessary or indispensable parties under Rule 19."); *McLaughlin v. International Ass'n of Machinists & Aerospace Workers*, 847 F.2d 620, 621 (9th Cir. 1988) (same). Because this lawsuit concerns the powers of the Defendants, and not the treaty fishing rights, the Tribes do not have a protected interest within the meaning of Rule 19(a).

### B. Any Asserted Legal Interests Will Not Be Impaired or Impeded.

Even if the Tribes had a protected interest in the litigation, disposing of this action in the Tribes' absence will not "impair or impede [their] ability to protect" that interest. Fed. R. Civ. P. 19(a)(1)(B). First, the Tribes have not shown that their interests are in need of protection. The Tribes themselves have alternative forums. In fact, these same Tribes had the opportunity to assert the very interests they advance here to their trustee, the federal government, as part of the proceedings before the Corps. (Doc. 4-2 at 5-15.) Of the three Tribes seeking dismissal here, only one of them (Umatilla) advanced objections to the second track project based on the fishing

treaties. The Umatilla Tribe offered only hypothetical or speculative information, despite multiple requests from the Corps for specific information regarding fishing stations/grounds and access to them. (Doc. 4-2 at 11-12.) The Corps found that, even assuming the Tribe fishes in the project area, the Umatilla Tribe still had multiple access points to the river. (Doc. 4-2 at 13-14.) Congress specifically made the Corps' findings subject to review in federal court under the APA, and the Tribe has not invoked that review process. Thus, any impairment in the Tribes' alleged treaty rights is a result of their own decision not to file an APA challenge.

Second, the named Defendants can adequately represent the Tribes' interests on the preemption issue. The Ninth Circuit adheres to the general rule that "an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." *Daley*, 173 F.3d at 1167. The Ninth Circuit considers three factors when analyzing adequate representation:

> whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would offer any necessary element to the proceedings that the present parties would neglect.

*Id.* (quotation marks and citation omitted).

All three factors are satisfied here. Defendants have to make all of the preemption arguments the Tribes would make because they have to defend the County's authority to regulate this interstate rail project. The record reflects that Defendants intend to vigorously present arguments on federal preemption. (Doc. 25.) The Tribes have not demonstrated any conflict between the Defendants and the Tribes. Finally, the Tribes do not assert any special expertise or knowledge with respect to the federal preemption issue.

In short, the Tribes do not have a protected interest that will be impaired or impeded. Because the Tribes have failed to demonstrate that they are required, which is "dispositive," this

Page 12    OPPOSITION TO MOTION TO DISMISS

Court need go no further in the Rule 19 analysis. *Cachil Dehe Band*, 536 F.3d at 1041; *Alto*, 738 F.3d at 1129 (upholding district court's decision not to reach Rule 19(b)).

## II. The Tribes Are Not "Indispensable" Under Rule 19(b).

Even if this Court concludes that the Tribes are required under Rule 19(a), the Court cannot dismiss unless the Tribes are also "indispensable parties" under Rule 19(b). Rule 19(b) sets out four factors to consider in deciding "whether in equity and good conscience the action should proceed among the parties before [the court], or should be dismissed."

- First, the extent to which "a judgment rendered in the person's absence might prejudice that person or the existing parties."

- Second, whether the prejudice can be lessened or avoided by protective measures, the shaping of relief, or other measures.

- "Third, whether a judgment rendered in the person's absence would be adequate."

- And, finally "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."

Fed. R. Civ. P. 19(b). Under Ninth Circuit precedent, courts "follow the four-factor process even with immune tribes." *Am. Greyhound Racing, Inc.*, 305 F.3d at 1025. "The inquiry is a practical one and fact specific and is designed to avoid the harsh results of rigid application." *Makah*, 910 F.2d at 558 (citation omitted). All four factors favor retaining jurisdiction here.

### A. The Tribes Do Not Satisfy the Four-Factor Test for Indispensability

First, contrary to the Tribes' arguments, the Tribes will not be prejudiced if this case proceeds in their absence. The treaty rights of the Tribes are not the subject of this proceeding and will not be adjudicated in this proceeding. This case is therefore unlike *Dewberry*, where this Court concluded that invalidating a Compact to which the absent tribe was a party would

Page 13     OPPOSITION TO MOTION TO DISMISS

"irrevocably impair[]" the absent tribe's protected interest in that contract. 406 F. Supp. 2d at 11148. The Tribes cannot show that their treaty rights would be irrevocably impaired if this Court granted Union Pacific's requested relief. In fact, the Tribes have alternative forums to protect their interests. Thus, they have not demonstrated prejudice.

Second, any prejudice can be limited (or eliminated) by the relief given by this Court. That relief can and should focus solely on the validity of the permit requirement and not adjudicate any tribal treaty rights. Further, the relief can specifically reserve the rights of the Tribes to pursue their treaty rights with the Corps. The Tribes are in a vastly different factual circumstance than in *Dewberry*, where this Court held that the plaintiffs in that case sought "nothing less than nullification" of the Compact. Here, Union Pacific does not seek to alter, invalidate, or nullify any of the Tribes' treaty rights—instead it seeks to vindicate Congress' express directive to preempt. 49 U.S.C. §10501(b).

Third, a judgment rendered in the Tribes' absence will be adequate. Union Pacific seeks a declaration that Defendants cannot impose permitting requirements on the rail construction project. (Doc. 1 at 16.) The absence of the Tribes would be irrelevant to the effectiveness of such relief.

Fourth, Union Pacific will not have an adequate remedy if this action is dismissed. The Tribes attempt to relegate Union Pacific to the very forum – the Gorge Commission – that Union Pacific asserts is preempted. This is not an adequate forum to decide the federal preemption questions. Further, the Tribes have not shown that the Gorge Commission even has the authority or expertise to consider Union Pacific's preemption arguments. *See* O.R.S. § 196.155 (vesting the Gorge Commission with powers to carry out their respective functions and responsibilities "in accordance with" the interstate compact and the National Scenic Act). The Gorge

Commission (consisting mainly of non-lawyers) would have to declare the permitting requirements to be unconstitutional under the U.S. Supremacy Clause and 49 U.S.C. § 10501(b). Finally, the Gorge Commission cannot provide timely relief to Union Pacific. Union Pacific faces irreparable harm in allowing the state proceeding to continue. (Doc. 3 at pp. 1-3, 4.) The Gorge Commission has set a hearing on the appeals for June 2017. Under this schedule, Union Pacific would not be afforded timely relief. "While we fully respect the sovereign prerogatives of the Indian tribes, we will not permit the Tribe's voluntary absence to deprive these plaintiffs (and in turn any member of the public) of their day in court." *Saratoga County Chamber of Commerce, Inc. v. Pataki*, 798 N.E.2d 1047, 1058 (N.Y. 2003). *See also Automotive United Trades v. State of Washington*, 285 P.3d 52, ¶¶ 42-48 (Wash. 2012) (Tribes not indispensable to preemption challenge because dismissal would have the effect of immunizing the defendants from meaningful judicial review).

### III.    In Any Event, the Public Rights Exception to Joinder Applies

In any event, an absent party will not be found "indispensable" where a federal lawsuit is necessary to vindicate public rights. The Ninth Circuit is clear: "We have adopted the 'public rights' exception to traditional joinder rules." *Makah*, 910 F.2d at 559 n.6; *see also Conor v. Burford*, 848 F.2d 1441, 1458-62 (9th Cir. 1988) (explaining public rights doctrine). The Tribes do not address the "public rights" exception to joinder, which applies here and mandates against dismissal.

In *Dewberry*, this Court explained:

> Plaintiffs must satisfy two requirements to invoke the public rights exception. First, "the litigation must transcend the private interests of the litigants and seek to vindicate a public right." Second, although the litigation may adversely affect the absent parties' interests, the litigation must not 'destroy the legal entitlements of the absent parties.'"

*Dewberry*, 406 F. Supp.2d at 1148-49 (*quoting Kescoli*, 101 F.3d at 1311).

Page 15    OPPOSITION TO MOTION TO DISMISS

This exception fits this case perfectly. First, Union Pacific is vindicating public rights. It seeks a declaration that, under the Interstate Commerce Commission Termination Act (ICCTA), a federal agency has exclusive jurisdiction over the construction and operation of interstate rail lines. (Doc. 1 at p. 16.) In that sense, Union Pacific acts on behalf of the public – in fact, the nation as a whole. This litigation thus "transcend[s] the private interests of the litigants." *Kescoli*, 101 F.3d at 1311. The ICCTA is a law of general applicability without exceptions. As such, it "govern[s] tribal entities unless Congress has explicitly provided otherwise." *CFPB v. Great Plains Lending*, __ F.3d __, 2017 WL 242560, at *7 (9th Cir. Jan. 20, 2017). Additionally, the ICCTA is concerned with national interests, and when Congress has provided a national process to evaluate projects in light of other factors, such as the environment, then tribal nations may not utilize sovereign immunity to thwart that procedure. *See Manygoats v. Kleppe*, 558 F.2d 556, 558-59 (10th Cir. 1977) (rejecting an indispensability argument by tribes because of interference with national environmental policy).

Second, Union Pacific does not seek to adjudicate any rights of the Tribes, but instead seeks to enforce the public right to compliance with the ICCTA. *Conner v. Burford*, 848 F.2d 1441, 1460 (9th Cir. 1988). As noted above, Union Pacific has not requested any determination of the Tribes' treaty rights. The litigation is not aimed at, and will not destroy, the Tribes' legal entitlements.

*Makah* demonstrates that the public rights exception is met here. 910 F.2d at 559 n.6. Union Pacific seeks to vindicate the U.S. Supremacy Clause and Congress' preemptive intent recognized by the Ninth Circuit. *See Automotive United Trades v. State of Washington*, 285 P.3d at ¶ 48 ("the constitution represents the interests of the appeal" and the "public interest in having the constitutionality" of defendants' actions "addressed is paramount"); *see also Oregon Coast*

*Scenic Railroad v. State of Oregon Dep't of State Lands*, 841 F.3d 1069, 1077 (9th Cir. 2016) (finding federal law preempts local permitting requirements); *City of Auburn v. U.S. Government*, 154 F.3d 1025, 1031 (9th Cir. 1998) (same). Union Pacific, like the plaintiff in *Makah*, "seek[s] to enforce the duty of the [County and Commission] to follow statutory procedures." *Id.* A case seeks to protect a "public right" where "the claims at hand derive from a federal regulatory scheme." *Dine Citizens v. United States*, No. 12-cv-1275-AP, 2013 WL 68701, at *5 (D. Colo. Jan. 4, 2013).

Union Pacific also seeks to vindicate public, as opposed to private, rights because Union Pacific is a common carrier and this project is infused with a strong public interest. The bottleneck at Mosier affects freight destined for locations throughout the western United States. (Doc. 4-1 at ¶¶ 11-13.) The public rights exception applies because Defendants' assertion of jurisdiction impacts the flow of freight in and out of the Portland region. *See id.*; *cf. Makah*, 910 F.2d at 559 n.6. This case is distinguishable from *Dewberry*, where this Court found the public rights exception inapplicable. There, individual plaintiffs asserted "parochial" interests, such as "the effect the Tribes' casino will have on their taxes, property values, and other quality of life interests." 406 F. Supp. 2d at 1149. Here, in contrast, Union Pacific seeks to vindicate Congressional policy and thus quintessential public rights.

In contrast to the plaintiff in *Dewberry*, and *American Greyhound* (upon which *Dewberry* relies), Union Pacific does not seek to invalidate the Tribes' treaty rights. To the extent there is any impact on the Tribes, which the Tribes have not demonstrated, it would be only "incidental" to the enforcement of the public right that Union Pacific seeks to vindicate. The Ninth Circuit has held that the mere fact that the litigation "may adversely affect" an absent party's interests does not preclude application of the public rights exception. Instead, the Tribes must

demonstrate that Union Pacific's preemption challenge will "destroy" the Tribes' "legal entitlements." *Kescoli*, 101 F.3d at 1311. Given the alternative forums available, the Tribes cannot demonstrate that this suit will "destroy" their "legal entitlements." *Kescoli*, 101 F.3d at 1311.

## CONCLUSION

Union Pacific respectfully requests that the Court deny the Rule 12(b)(7) motion to dismiss.

Dated this 6th day of February, 2017.

Respectfully submitted,

DUNN CARNEY ALLEN HIGGINS & TONGUE LLP

/s/ Brian R. Talcott
**Brian R. Talcott, OSB No. 965371**
Telephone: (503) 224-6440

**Brian Nichols**
MODRALL SPERLING
Telephone: (505) 848-1800
*Admitted pro hac vice*

**Charles G. Cole**
**Alice E. Loughran**
STEPTOE & JOHNSON LLP
*Admitted pro hac vice*

Attorneys for Union Pacific Railroad Company