IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

UNION PACIFIC RAILROAD
COMPANY,

             Plaintiff,

    v.

ROD RUNYON, Commission Chair
of the Wasco County Board of Commissioners,
et. al.,

             Defendants.

Case No. 3:17-cv-00038-AA

OPINION AND ORDER

AIKEN, Judge:

The Confederated Tribes of the: (1) Umatilla Indian Reservation; (2) Warm Springs Reservation of Oregon; and (3) Bands of the Yakama Nation (collectively the "Treaty Tribes"), move the Court for an order dismissing plaintiff Union Pacific Railroad's ("UPRR") Complaint (doc. 1) pursuant to Rule 12(b)(7) for failure to join them as necessary parties to the action as

required by Rule 19. Treaty Tribes' Joint Mot. Dismiss (doc. 28) 2. For the following reasons, the Treaty Tribes' Motion to Dismiss is GRANTED.

<u>FACTUAL BACKGROUND</u>

Plaintiff is an interstate railroad operating in twenty-three states. Pl.'s Mot. for Prelim. Injunction 2 (citing the Declaration of Luke Baatz in Supp. of Pl.'s Mot. for Prelim. Injunction ("Baatz Decl.") ¶ 4). Plaintiff owns a mainline track that runs within the Columbia River Gorge in Wasco County and near the City of Mosier, which "was built more than a century ago." Pl.'s Compl. ¶ 1. Plaintiff asserts that this segment of track has become a bottleneck for interstate freight trains moving through the Gorge area, and it plans to alleviate this bottleneck by extending and upgrading a second 5.37-mile track adjacent to the existing mainline track. The extensions and upgrades to that second track, which is located near the City of Mosier, will cost $42 million, $5.3 million of which has already been spent on permitting, engineering, and property acquisition. *Id.* at ¶¶ 1, 23, 26. On November 4, 2016, plaintiff received a permit from the U.S. Army Corps of Engineers (the "Corps") authorizing construction of the new track. *Id.* at ¶ 35. Plaintiff alleges that defendants, who hold leadership roles with the Wasco County Board of Commissioners ("Wasco Board") and the Columbia River Gorge Commission ("Gorge Commission"),[1] are now "attempting to block this critical infrastructure improvement through the application of the Wasco County National Scenic Area Land Use and Development Ordinance (the "County Ordinance"). *Id.* at ¶ 1.

Specifically, plaintiff asserts that although "the permitting process under the [County Ordinance] as applied to this rail construction project is preempted by the ICCTA [Interstate Commerce Commission Termination Act] at 49 U.S.C. § 10501(b) . . . in the spirit of

---

[1] Defendants are the chair and two commissioners on the Wasco Board, the planning director of the Wasco Board, and the chair and five members of the Gorge Commission.

2 – OPINION AND ORDER

cooperation, [it] submitted on January 9, 2015 an application to Wasco County for comment." *Id.* at ¶ 39. In so doing, plaintiff "expressly reserved the right to invoke ICCTA preemption." *Id.* On September 29, 2016, the Wasco County Planning Commission approved plaintiff's application, subject to certain conditions. *Id.* On November 14, 2016, the Wasco Board reversed the Wasco County Planning Commission's decision and denied the proposed rail expansion project because as, the Wasco Board explained, plaintiff's rail expansion project "'affects treaty rights.'" *Id.* at ¶ 41 (citing the Wasco Board's Order at 10). Plaintiff filed an appeal to the Gorge Commission. *Id.* at ¶ 42.

PROCEDURAL BACKGROUND

Soon after filing the appeal with the Columbia River Gorge Commission, plaintiff filed a Complaint (doc. 1) in this Court. Plaintiff seeks a declaratory order stating that federal law (ICCTA at 49 U.S.C. § 10501(b)) preempts the permitting process imposed by the County Ordinance, *id.* at ¶¶ 2, 39, and that defendants' application of the County Ordinance to this rail project impermissibly burdens interstate commerce in violation of the Commerce Clause, U.S. Constitution, Art. I, Section 8. *Id.* at ¶ 3.

On the same day plaintiff filed this action, plaintiff also filed a Motion for Preliminary Injunction (doc. 3) pursuant to Rule 65 and requested an expedited hearing on the Motion. Plaintiff argues that it must "commence construction" or "enter into contracts" for the construction of the project by the contract expiration date of March 18, 2017, in order to avoid suffering irreparable harm due to inability to begin construction before its permit expires. *Id.* at 2.

On January 23, 2017, proposed intervenors: (1) Friends of the Columbia Gorge, Inc. ("Friends"); (2) Columbia Riverkeeper ("Riverkeeper"); and (3) Oregon Physicians for Social

Responsibility ("Physicians") (collectively "Gorge Intervenors"), filed a Motion to Intervene (doc. 16). This Court granted the Motion to Intervene on February 15, 2017 (doc. 47) after plaintiff filed a Response (doc. 37) to Gorge Intervenors' Motion, stating it was unopposed to the Motion.

On January 30, 2017, "while expressly reserving their sovereign immunity," the Treaty Tribes jointly moved this Court, pursuant to Rule 12(b)(7), for an order dismissing this action with prejudice for failure to join them as parties as Rule 19 requires. Treaty Tribes' Mot. Dismiss 2. On February 6, 2017, defendants Rod Runyon, the Commission Chair of the Wasco Board, Steve Kramer and Scott Hege, Commissioners on the Wasco Board, and Angie Brewer, Planning Director of the Wasco Board (collectively the "County defendants") filed a Response (doc. 39) to The Treaty Tribes' Motion to Dismiss, concurring with the Treaty Tribes' Motion and "emphasiz[ing] the federally mandated evaluation of treaty rights undertaken by Wasco County in its subject decision." *Id.* at 1.

Also on February 6, 2017, the County defendants filed their response to the Treaty Tribes' Motion to Dismiss, and defendants Bowen Blair, Chair of the Gorge Commission, as well as Gorham Blaine, Dan Erickson, Robert Liberty, Rodger Nichols, and Antone Minthorn, the Oregon-based Members of the Gorge Commission (collectively the "Gorge Commissioner defendants") filed a Response (doc. 40) to the Treaty Tribes' Motion to Dismiss, concurring with the Treaty Tribes' Motion and "emphasizing that there exists an alternative forum in this matter." *Id.* at 1. The Court heard oral arguments on the Treaty Tribes' Joint Motion to Dismiss (doc. 28) on Tuesday, February 21, 2017. *See* Doc. 38.

<u>DISCUSSION</u>

The Treaty Tribes argue that their Motion to Dismiss should be granted and the case dismissed with prejudice because: (1) they are necessary parties under Rule 19 since proceeding with the action in their absence would impair or impede their ability to protect their treaty-reserved fishing rights; (2) their inherent sovereign powers preclude their joinder in this action; and (3) the case cannot, in equity and good conscience, proceed without them. Treaty Tribes' Mot. Dismiss 12.

Plaintiff argues that the Treaty Tribes' Motion should be denied for three reasons. First, plaintiff argues the Tribes are not "necessary" parties under Rule 19(a) because: (1) "they do not have an 'interest' relating to the subject of [the] action," which is determining "who has jurisdiction to regulate the rail construction project"; (2) "they have not shown that their ability to protect their interests will be impaired by this lawsuit" because if plaintiff prevails, "the Tribes are free to pursue their arguments in the forums designated by Congress"; and (3) the Corps "has jurisdiction over this project under the federal Clean Water Act" and "has a fiduciary duty to take treaty rights into consideration." Pl.'s Opp'n to Treaty Tribes' Mot. Dismiss 3.

Second, plaintiff argues that the tribes are not "indispensable" parties under Rule 19(b), because "they are not being denied an opportunity to be heard," but rather are using "their voluntary absence from this lawsuit to deprive [plaintiff] of its day in court on the federal preemption issue." *Id.* at 4.

Third, plaintiff argues that the Tribes' Motion should be denied because the "Tribes' asserted interests do not overcome the public rights [plaintiff] seeks to vindicate in this action." *Id.*

Federal Rule of Civil Procedure 12(b)(7) authorizes dismissal of an action for failure to join a party under Federal Rule of Civil Procedure 19. In determining whether a party is required to be joined, Rule 19 imposes a three-step inquiry:

1. Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?

2. If so, is it feasible to order that the absent party be joined?

3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?

*Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1197 (9th Cir. 2012) (internal citation omitted).

## I.    Rule 19(a): Necessary Party

Federal Rule of Civil Procedure Rule 19(a)(1) states that a party is necessary if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impeded the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

Fed. R. Civ. P. 19(a)(1).

The Ninth Circuit's analysis of what makes a party necessary under Rule 19(a)(1) consists of two broad inquiries: first, can complete relief be provided to existing parties in the absence of the party seeking to join?; and second, does the absent party claim an interest that relates to the subject of the action? *Ward v. Apple, Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015). The scope of the 19(a)(1) inquiry does not change because the purportedly necessary party is a

federally recognized Native American tribe. *Alto v. Black*, 738 F.3d 1111, 1126-28 (9th Cir. 2013); *Cahil*, 547 F.3d at 970 (9th Cir. 2008); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022-23 (9th Cir. 2002); *Yellowstone Cnty. v. Pease*, 96 F.3d 1169, 1172-73 (9th Cir. 1996). The inquiry is "practical" and "fact-specific." *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2010); *Cahil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 970 (9th Cir. 2008); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

The Treaty Tribes in this case do not argue that complete relief cannot be provided among the existing parties in the Treaty Tribes' absence, nor do they argue that failure to join them will leave existing parties subject to a substantial risk of incurring multiple or otherwise inconsistent obligations. Instead, the Treaty Tribes argue that they have an interest that is related to the subject of this action and that their ability to protect this interest will be impaired in their absence. Tribes' Mot. Dismiss 9-10.

## A. The Tribes' Claimed Interest in the Litigation

To determine whether the Treaty Tribes are necessary parties under Rule 19(a)(1)(B)(i), the Court first must determine whether the Treaty Tribes claim an interest relating to the subject of the litigation. There are "few categorical rules" regarding whether a party has an interest within the meaning of 19(a)(1)(B). *Cahil*, 547 F.3d at 970. "At one end of the spectrum, we have held that the interest at stake need not be 'property in the sense of the due process clause'" and "at the other end of the spectrum, we have recognized that the 'interest must be more than a financial stake, and more than a speculation about a future event.'" *Id.* (quoting *Makah*, 910 F.2d at 558). "Within the wide boundaries set by these general principles, we have emphasized the 'practical' and 'fact-specific' nature of the inquiry." *Id.* (citing *Makah*, 910 F.2d at 558).

Here, the Treaty Tribes seek to protect their treaty-reserved fishing rights. Tribes' Mot. Dismiss 8-10. The Wasco Board determined that plaintiff's proposed expansion of its railroad tracks would interfere with those rights, and denied plaintiff's permit application on the basis of that interference. Hinman Decl. ¶ 2, Ex. A. 10 (doc. 32-1).

///

There is no doubt that as a general matter, treaty-reserved fishing rights may be an "interest" within the meaning of Rule 19. *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999). Such rights are much more than a financial stake or speculation. They are rights that are of great significance to tribes generally. *See United States v. Confederated Tribes of Colville Indian Reservation*, 606 F.3d 698, 701 (9th Cir. 2010) (characterizing the Wenatshapam Fishery as the "hub around which the Wenatchi's cycle of life rotated"). They are a function of tribal sovereignty and allow tribes to enforce fishing laws against tribal members. *See United States v. Sohappy*, 770 F.2d 816 (9th Cir. 1985) (finding that tribes "have a strong interest in enforcing their tribal fishing regulations according to their own dictates and concurrent federal jurisdiction might impair independent tribal control."). They are so strong they survive conveyance of title to the underlying land. *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 202 (9th Cir. 1991) (reiterating the Supreme Court's finding that conveyance of title does not include treaty-reserved hunting and fishing rights). The United States government has implicitly recognized the importance of such rights by vigorously defending them in court. *Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658 (1979) (in 1970, the United States, on its own behalf and as trustee for seven tribes, sued the State of Washington to protect the tribes' treaty-reserved fishing rights.).

Here, however, the critical question is whether the Treaty Tribes' indisputable interest in their treaty-reserved fishing rights "relates to the subject of the action" under Rule 19. On the particular facts of this case, the treaty-reserved fishing rights are closely related to the subject of this lawsuit. Plaintiff seeks to invalidate the Wasco Board's permit denial. The *sole* basis for that denial was interference with the Treaty Tribes' treaty-reserved fishing rights. Hinman Decl. ¶ 2, Ex. A. 10 (doc. 32-1). Had the Wasco Board made a different finding about treaty rights, it would have granted the permit and this lawsuit never would have been filed. Bearing in mind the practical, fact-specific nature of the Rule 19(a) inquiry, the Court is bound to conclude that the treaty-reserved fishing rights "relate" to the subject matter of this action.

Plaintiff implicitly recognizes the importance of the Treaty Tribes' treaty-reserved fishing rights by arguing that this litigation is not really about those rights. Pl.'s Opp'n to Tribes' Mot. Dismiss 2 (doc. 42). Instead, plaintiff insists that this litigation is only about federal preemption, specifically whether 49 U.S.C. § 10501(b) preempts County defendants' authority to regulate plaintiff's construction project. *Id.* ("The only issue in this litigation is whether defendants . . . have authority to regulate Union Pacific's rail construction project."). However, a party cannot avoid a finding of necessity under Rule 19 by its characterization of the issue, especially when the outcome of the litigation would affect tribal interests. As the Ninth Circuit explained in *Quileute*, 18 F.3d at 1458, "necessity . . . cannot be avoided by characterizing the issue as constitutionality [of the statute]. If the [statute] were to be found unconstitutional, it would affect the property interests of the [tribes]." Similarly, if plaintiff's argument regarding preemption were to succeed, it would affect the Treaty Tribes' treaty-reserved fishing rights because it would enable plaintiff to proceed with its railway expansion project through land that is subject to those rights.

The Court is not persuaded by plaintiff's attempt to characterize this litigation as being only about preemption. The Court finds that the Treaty Tribes have, in pointing to their treaty-reserved fishing rights, claimed an interest that falls within the wide boundaries of the Ninth Circuit's practical Rule 19(a)(1)(B) inquiry.

///

///

### B. The Tribes' Ability to Protect Their Interest

The next step under Rule 19(a)(1)(B)(ii) is to determine whether the absent party's ability to protect its interest will be impaired or impeded if the action proceeds without joinder. In assessing whether an interest will be impaired or impeded, the Ninth Circuit focuses on whether that party's interest is adequately represented by the present parties. *Alto*, 738 F.3d at 1126-29 (citing *Washington*, 173 F.3d at 1167); *Salt River*, 672 F.3d at 1180; *White*, 765 F.3d at 1027. Courts make this determination by applying the three *Shermoen* factors:

> (1) Whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments;
>
> (2) Whether a present party is capable of and willing to make such arguments; and
>
> (3) Whether the absent party would offer any necessary element to the proceedings that the present parties would neglect.

*Alto*, 738 F.3d at 1127-28 (citing *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)); *White*, 765 F.3d at 1031 (citing *Shermoen*); *Am. Greyhound*, 305 F.3d at 1023, n.5; *Washington*, 173 F.3d at 1167.

Here, the first *Shermoen* factor—whether the interests of the present party are such that it will undoubtedly make all of the absent party's arguments—weighs in favor of finding the Treaty Tribes' ability to protect its interest will be impeded. The Court is unable to conclude that

either defendants or intervenors will make all of the Treaty Tribes' arguments. In *Alto*, the court determined that the absent tribe's interests were adequately represented under the first *Shermoen* factor because the present party shared an interest with the tribe in defending the order at issue. *Alto*, 738 F.3d at 1127-28. However, in *Alto*, the present party was the United States Bureau of Indian Affairs ("BIA"). *Id.* The United States is often able to adequately represent an absent tribe because the federal government regularly has a fiduciary or trust relationship with federally recognized tribes. *See Seminole Nation v. United States*, 316 U.S. 286, 296-97 (1942) ("[T]his Court has recognized the distinctive obligation of trust incumbent upon the Government in its dealings with these dependent and sometimes exploited people"); *Alto*, 738 F.3d at 1128 (finding that absent tribes interest was adequately represented by the BIA because the BIA had a trust responsibility to the tribes); *Washington*, 173 F.3d at 1168 (finding the United States can adequately represent tribes when there is no conflict because they have "virtually identical interests").

Unlike in *Alto*, defendants and intervening parties here are not the federal government, and thus they have no fiduciary duty or trust responsibility to protect treaty rights. Further, when a present party is not the federal government and has a "broad obligation" to serve many people, that party generally does not share a sufficient interest with an absent tribe to satisfy the first *Shermoen* factor. *White*, 765 F.3d at 1027 (finding that a state university could not adequately represent the interests of the absent tribes because the university had a "broad obligation to serve the interests of the people of California, rather than any particular subset," and therefore had different motivations). Here, County defendants, particularly the Wasco Board, have broad

obligations to the people in Wasco County.[2] Of the potential parties to this litigation, only the

Corps has a fiduciary duty to take tribal treaty rights into consideration.  Pl.'s Opp'n Mot.

Dismiss 3 (doc. 42).  The Corps, however, is not a present party to this litigation.  Accordingly,

the present parties do not share a sufficient interest with the Treaty Tribes to be able to satisfy the

first *Shermoen* factor.

The second *Shermoen* factor—whether the present party is capable of or willing to make

the absent party's arguments—also weighs in favor of finding the Treaty Tribes necessary to this

action.  In *Alto*, the present party (the federal government) repeatedly avowed its intention and

ability to represent the tribe's interest.  *Alto*, 738 F.3d at 1127-28.  Here, neither defendants nor

intervenors have represented that they have the intent or ability to represent the Treaty Tribes'

interests.

The third and final *Shermoen* factor—whether the absent party would offer any necessary

element to the proceedings that the present parties would neglect—is neutral.  In *Alto*, had the

tribe been a party to the lawsuit, it would have been barred from offering new evidence because

the court's review was limited to the administrative record.  *Alto*, 738 F.3d at 1128.  Here, the

Court is not so limited, and the Treaty Tribes would be free to introduce new evidence if they

were parties.  The Court is mindful of the Treaty Tribes' special status as sovereign nations with

expert knowledge in their history, culture, and law.  At this stage, the Court cannot conclude that

this expert knowledge and evidence would be useless in analyzing the merits of plaintiff's

claims.  However, the Treaty Tribes have not explained what new evidence or arguments they

---

[2] According to the Wasco County Planning Department website "mission statement," the
Planning Department seeks to help "county residents implement a shared vision for balanced
development that supports strong local economy, livability of our rural communities, and high
quality natural resources for current and future generations." *Planning Home*, WASCO COUNTY,
http://co.wasco.or.us/departments/planning/index.php (last visited Feb. 27, 2017).

might introduce that would bear on the adjudication of the claims at issue here, which concern preemption and violation of the Commerce Clause. The Court therefore concludes the third *Shermoen* factor weighs neither for nor against finding the Treaty Tribes to be necessary parties.

In view of all three *Shermoen* factors, the Court finds that the present parties are not capable of adequately representing the Treaty Tribes' interests. As such, because the Treaty Tribes claim an interest related to the subject of this litigation, this Court finds that the Treaty Tribes are a necessary party under the Ninth Circuits' broad, practical, and fact-specific approach to Rule 19(a)(1).

## II.    Feasibility of Joining Treaty Tribes

The second question in the *Salt River* analysis is whether it is feasible to join the absent party. It is well established that federally recognized tribes cannot be compelled to join a federal action unless they unequivocally waive their sovereign immunity or Congress expressly abrogates their immunity from suit. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (finding that in the absence of any equivocal expression of contrary legislative intent, suits against the tribe under the ICRA are barred by sovereign immunity); *Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996) (finding that the Navajo Nation's and Hopi Tribe's sovereign immunity prevents them from being joined to the matter involuntarily, absent unequivocal waiver); *Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136, 1145 (D. Or. 2005) (finding legal action against an Indian tribe is precluded unless the tribe waives its immunity or Congress expressly abrogates tribal immunity).

The only instance where a tribe may not use sovereign immunity as a defense to joinder under Rule 19(a) is if the suit is brought by the United States. *E.E.O.C. v Peabody Western Coal*

*Co.*, 400 F.3d 774, 781-82 (9th Cir. 2005) (finding that sovereign immunity did not bar the Tribe from being joined in the suit when the party filing suit is an agency of the United States).

Here, as stated above, the Treaty Tribes have specifically reserved their sovereign immunity in their Motion to Dismiss, and Congress has not expressly abrogated the Treaty Tribes' rights in these circumstances. Moreover, the plaintiff in this case is not the United States. As such, the Treaty Tribes cannot be compelled to join this action and joinder is, therefore, not feasible under the second step of the *Salt River* analysis.

///

///

### III.   Rule 19(b): Indispensable Party

The Court now turns to the third and final question in the *Salt River* Rule 19 analysis. If a party is necessary but cannot feasibly be joined, "the court must determine whether, in equity and good conscience, the action should proceed amongst the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). In deciding if the action should proceed, the court determines:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* By balancing these four factors, the court will determine if the party is indispensable and if the case can proceed. *Kescoli*, 101 F.3d at 1310.

Some federal appellate courts have noted that when the absent party is a tribe asserting sovereign immunity, "there may be very little need for balancing Rule 19(b) factors because immunity itself may be viewed as one of those interests compelling by themselves which requires dismissing the suit. *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1162 (9th Cir. 2002) (citation and quotation marks omitted, punctuation normalized). The Ninth Circuit has not adopted a blanket rule of indispensability when the absent party is a tribe and has "consistently applied the four part balancing test" to determine the correct outcome under Rule 19(b). *Id.* The absent party's sovereign status does, however, play a role in the analysis. If the four part test presents a close case, *i.e.* if the factors "do not clearly weigh in favor" of permitting the action to proceed, it may be that "the concerns for the protection of tribal sovereignty" tip the scales in favor of dismissal. *Kescoli*, 101 F.3d at 1311; *see also Clinton v. Babbitt*, 180 F.3d 1081, 1090 (9th Cir. 1991) (affirming district court's dismissal of the case even though the absence of an alternative forum weighed in favor of the plaintiffs).

The first factor of Rule 19(b) requires consideration of potential prejudice to both the absent party and the existing parties. Fed. R. Civ. P. 19(b)(1). To the extent this factor focuses on prejudice to the absent party, this factor "largely duplicates the consideration that made a party necessary under Rule 19(a): a protectable interest that will be impaired or impeded by the party's absence." *Am. Greyhound Racing, Inc.*, 305 F.3d at 1026. This Court has already found that the Treaty Tribes' ability to protect their interests will be harmed if this lawsuit proceeds in their absence. This factor, therefore, weighs in favor of dismissal.

Under the second factor of Rule 19(b)—the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures—there is no relief available that would lessen the prejudice for the Treaty Tribes. The Treaty Tribes explain that they have a great dependence on the fisheries and that the fisheries are used for "subsistence, ceremonial, and medicinal purposes." Treaty Tribes' Mot. Dismiss 4. Because of this dependence, the Treaty Tribes have a major concern about plaintiff's project as it would increase traffic across the Umatilla Reservation and the Columbia River as much as twenty-five percent, leading to more spills that would damage the water in which the Tribes fish. *See* Tribes' Reply in Supp. of Mot. Dismiss 15, n. 11. (citing Huber Decl. (doc. 45)).

Plaintiff has not proposed any way to modify or shape the relief to alleviate prejudice to the Treaty Tribes, and no such modification is apparent to the Court. A decision in plaintiff's favor would shut down the County permitting process through which the Treaty Tribes are currently protecting their treaty rights. Therefore, this factor weighs in favor of dismissal.

The third factor of Rule 19(b)—whether a judgment rendered in the person's absence would be adequate—weighs in favor of allowing the action to proceed without the Treaty Tribes. The questions presented by plaintiff are questions of federal law. Resolution of those questions would either shut down the County defendant's permitting process (as preempted and/or in violation of the Commerce Clause) or allow the permitting process to stand. The Treaty Tribes' participation in the lawsuit is not necessary to render an adequate judgment because the party with full control over the permitting process, Wasco County, is a party to this lawsuit.

The fourth factor of Rule 19(b) requires the Court to consider whether plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. The Treaty Tribes argue that the Gorge Commission provides a viable alternative forum. As stated above, plaintiff's

appeal before the Gorge Commission is currently pending. It is clear that the appeal provides an alternative forum for plaintiff to attempt to overturn the denial of its permit application. Plaintiff asserts that the appeal is inadequate, however, to permit it to raise the claims it asserts in this action regarding preemption and the Commerce Clause.

On this record, the Court concludes the Gorge Commission is an adequate alternative forum. The Gorge Commission submitted a response to the Treaty Tribes' motion to dismiss confirming that is willing and able to hear plaintiff's arguments in the appeals process. *See* Gorge Commission Defs.' Resp. Treaty Tribes' Mot. Dismiss 1 (doc. 40). Plaintiff complains that a majority of Gorge Commission members are not lawyers, but in other contexts, federal courts regularly hold that administrative proceedings—often presided over by nonlawyers—provide an adequate opportunity to raise questions of federal law. *See Plaine v. McCabe*, 797 F.3d 713, 719 (9th Cir. 1986) (explaining when a state administrative proceeding has preclusive effect in federal court). Moreover, orders of the Gorge Commission are subject to appeal in state courts, where the presiding judges are lawyers fully competent to adjudicate questions of federal law. *See, e.g., Friends of the Columbia Gorge, Inc. v. Columbia River Gorge Comm'n*, 213 P.3d 1164, 1167-68 (Or. 2009) (considering whether the Gorge Commission's revision of its management plan violated the Columbia River Gorge National Scenic Area Act, 16 U.S.C. § 544-544p); *Skamania Cnty. v. Woodall*, 16 P.3d 701, 705 (Wash. Ct. App. 2001) (considering whether the Gorge Commission should have applied state or federal law in adjudicating competing applications to operate mobile home parks). The availability of an alternative forum weighs in favor of dismissal.

Three of the four 19(b) factors weigh in favor of finding that the Treaty Tribes are indispensable parties. The ability to render adequate relief in the Treaty Tribes' absence weighs

against such a finding. This is, therefore, one of the close cases where the 19(b) factors do not point uniformly in one direction. Three considerations tip the scales here. First, the majority of the 19(b) factors favor dismissal. Second, the fact that the absent parties are sovereign nations strongly suggests that dismissal is the correct course. *Am. Greyhound Racing, Inc.*, 305 F.3d at 1026.

Finally, the unusual factual background here warrants consideration. Plaintiff reserved its preemption arguments when it applied to Wasco County for a permit. It thus voluntarily participated in the County's process despite believing that process violated the Supremacy Clause and the Commerce Clause. In the federal permitting process, the Corps expressly relied on the County process with respect to compliance with the Columbia River Gorge National Scenic Area Act and its attendant tribal consultation requirements. *See* Baatz Decl. Ex. 2 at 18 Jan. 10, 2017 (doc. 4-2) ("[I]t is UPRR that is proposing to conduct the development action in the Scenic Area, not the Corps, and as such, the responsibility to comply with the Act, if any, should fall on UPRR.") The Corps noted that undertaking its own review in this area would be "duplicative." *Id.* Plaintiff never asserted that the Corps should ensure the project complied with federal law. Instead, plaintiff chose to raise its preemption arguments in federal court only after the County denied the permit. There is no rule against such strategic maneuvering, but it may fairly be taken into account when considering whether "in equity and good conscience" a suit should be dismissed or permitted to go forward. Fed. R. Civ. P. 19(b)(2).

Taking into consideration the balance of the 19(b) factors, respect for tribal sovereignty, and the factual background of this case, the Court concludes that the Treaty Tribes are indispensable parties to this litigation.

IV.    **Public Rights Exception**

Plaintiff argues that even if the Treaty Tribes are found to be necessary and indispensable parties, the "public rights" exception to joinder applies and precludes dismissal. Pl.'s Opp'n to Tribes' Mot. Dismiss 15.

While the "contours of the public rights exception have not been clearly defined," courts generally engage in a basic two-pronged inquiry. *Kescoli*, 101 F.3d at 1311. First, "the litigation must transcend the private interests of the litigants and seek to vindicate a public right" and, second, "although the litigation may adversely affect the absent parties' interests, the litigation must not 'destroy the legal entitlements of the absent parties.'" *Dewberry*, 406 F. Supp.2d at 1148-49 (quoting *Kescoli*, 101 F.3d at 1311).

///

///

### A. Prong one

Under the first prong of the public rights exception, plaintiff must first show that "the litigation . . . transcend[s] the private interests of the litigants and seek[s] to vindicate a public right." *Kescoli*, 101 F.3d at 1311. In the Ninth Circuit, the Court does not apply the public rights exception to cases where the plaintiff's private interest is advanced even though the general basis of the action involves public interest. *See Am. Greyhound Racing, Inc.*, 305 F.3d at 1026 (determining that even if the general subject of the litigation is "of great public interest," if the narrow issue in the case is more private than public, the public rights exception does not apply.).

Plaintiff argues that its claim satisfies the first prong of the public rights exception inquiry because it is "vindicating public rights" by seeking a declaration that "under the [ICCTA], a federal agency has exclusive jurisdiction over the construction and operation of

interstate rail lines." Pl.'s Opp'n to Tribes' Mot. Dismiss 16 (citing Pl.'s Compl. 16). Plaintiff argues that "in that sense, [it] acts on behalf of the public – in fact, the nation as a whole." *Id.*

The Treaty Tribes respond that the public rights exception right does not apply because even though the broad preclusion question may be of general public interest, the subject matter of the litigation is "primarily private in nature." Reply Mem. Supp. Mot. Dismiss by Treaty Tribes 31. In support of their argument, the Treaty Tribes note plaintiff's marketing focus on increased revenue that will flow from the Project. For example, in a public outreach flyer, plaintiff stated that it will be able to run an additional five to seven trains per day once the project is constructed. Huber Decl. ¶¶ 10-11 (referring to a flyer available on the Mosier City Council's website at https://mosiercitycouncil.files.wordpress.com/2012/08/mosier-fact-sheet.pdf). The additional five to seven trains per day amount to an approximate increase in rail traffic of twenty-five percent. *Id.* ¶ 11. In 2016, plaintiff earned an average of $2,203 per freight car. *Id.* ¶ 13 & Ex. F at 26.

Moreover, as explained above, plaintiff did not seek to assert its preemption and Commerce Clause arguments until after the Wasco Board denied its application. That fact undercuts plaintiff's assertion that its purpose in this lawsuit is to assert a broad public right rather than advance its own private interest.

Although it is not clear the total amount of money plaintiff will gain from this Project, the Court finds that this lawsuit centers primarily on advancement of a private right. Accordingly, plaintiff fails to make the required showing on the first prong of the public rights exception.

## B. Prong Two

Under the second prong of the inquiry, the plaintiff must show that "the public rights exception to joinder rules is an acceptable intrusion upon the rights of absent parties."

*Shermoen*, 982 F.2d at 1319.   Application of the exception is "acceptable" only when the "adjudication does not destroy the legal entitlements of the absent parties."   *Id.* (quoting *Conner*, 848 F.2d at 1459) (alterations omitted).   The question is whether the litigation is aimed at the absent parties' interests or only incidentally affects those interests.   *Am. Greyhound Racing, Inc.*, 305 F.3d at 1026.

Plaintiff provides two arguments in support its argument that the litigation does not adjudicate the Treaty Tribes' rights.   First, plaintiff argues that "[t]he litigation is not aimed, and will not destroy, the Tribes' legal entitlements" because this Court may rule on the preemption and Commerce Clause questions without making any determination regarding treaty rights.   Pl.'s Opp'n Tribes' Mot. Dismiss 16.   In response, the Treaty Tribes argue that the litigation is aimed directly at the Treaty Tribes because it has been determined by the Wasco Board that the Track Expansion Project will affect the Treaty Tribes' reserved rights.   Reply Mem. Supp. Mot. Dismiss by Treaty Tribes 30.

In support of its position, plaintiff relies on *Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990).   *Makah* concerned a fishing quota system administered by the Pacific Fishery Management Council and the Secretary of Commerce.   *Id.* at 557.   The quota system was part of a regional fishery management plan that harmonized the treaty-reserved fishing rights of twenty-four affected Indian tribes to annual harvest rate limits designed to keep the fisheries sustainable. The Makah Indian Tribe ("the Makah") sued in federal court, asserting claims the Ninth Circuit separated as substantive and procedural.   In the substantive claim, the Makah sought a declaration and injunction increasing their quota.   In the procedural claim, the Makah argued the regulations governing the quota system violated federal law because they resulted from secret

negotiations outside the ordinary rulemaking process. The district court dismissed the suit, holding that the twenty-three absent tribes were indispensable parties to the litigation.

The Ninth Circuit affirmed as to the substantive claim, which effectively sought a reallocation of the harvest among the tribes. That claim could not proceed because reallocation that benefited the Makah would necessarily disadvantage some other tribe. *Id.* at 559-60. The Ninth Circuit reversed, however, on the procedural claim. Noting its adoption of the public rights exception to joinder rules, the court stated that "[t]o the extent the Makah seek to enforce the duty of the [Council] and the Secretary to follow statutory procedures in the future, this is a 'public right' and this action becomes one that potentially benefits all who participate in the ocean fishery." *Id.* at 559 n.6.

The present case is distinguishable from *Makah* for two reasons. In *Makah*, there was a clean separation between the substantive and procedural claims. Success on the procedural claims might have led the Secretary to revisit all the regulations (thus incidentally affecting the absent tribes' rights), but redrafting the plan would not necessarily have given the Makah the higher quota it sought. Here, by contrast, the preemption/Commerce Clause questions and the Treaty Tribes' rights overlap. The sole basis for Wasco County's decision to deny plaintiff's permit was that the Track Expansion Project would impermissibly impact Treaty Tribes' rights. Further, granting plaintiff's relief would mean that the Track Expansion Project continues and the Treaty Tribes' interests would be endangered. If plaintiffs were to succeed in this lawsuit, that success would necessarily and immediately invalidate a permit denial that rested solely on the finding that the Project would harm Treaty Tribes' rights. The relationship between this lawsuit and the Treaty Tribes' rights is direct, not incidental. *Cf. Am. Greyhound Racing, Inc.,* 305 F.3d at 1026 ("In the present case, the effect of the district court's injunction is not merely to

require adherence to certain procedures in entering or extending gaming compacts with the tribes; it is to prevent new compacts or the extension of existing ones.")

Second, even if the Court accepts plaintiff's assertion that its claim and Treaty Tribes' interests are not inextricably intertwined and directly adverse, the question at issue in this case is not a purely procedural claim whose resolution will benefit all who participate in the process of obtaining development permits in the Columbia River Gorge. Plaintiff does not argue that the Wasco Board violated its own procedures in considering the permit application.

Because plaintiff's claim is aimed at Treaty Tribes' interests, plaintiff failed to meet the second prong of the public rights exception. *Am. Greyhound*, 305 F.3d at 1026. The exception does not apply.

///

///

## CONCLUSION

Because the Treaty Tribes are necessary and indispensable parties under Rule 19(a) and (b), and because the public rights exception does not apply, the Treaty Tribes' Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

DATED this 8ᵗʰ day of March 2017.

_____
ANN AIKEN
United States District Judge